IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTONIO E. ALCALA,

                  Plaintiff,                Case No. 3:08 CV 1936

    -vs-

                                        <u>MEMORANDUM   OPINION</u>

WHIRLPOOL CORPORATION,

                  Defendant.

KATZ, J.

In this action, Plaintiff Antonio Alcala brings claims against his former employer, Defendant Whirlpool Corporation, alleging constructive discharge, discrimination on the basis of race, national origin or ancestry, and retaliation in violation of Title VII, 42 U.S.C. § 1981, and Ohio Revised Code Section 4112.99.  Plaintiff, who is Hispanic, claims that he was wrongly passed over on multiple occasions for engineering positions in favor of white candidates. Defendant has now moved for summary judgment on all of the claims against it (Doc. 21).  The motion will be granted.

**I. Background**

Plaintiff was hired by Defendant to work at its Clyde, Ohio facility immediately after his graduation from high school in 1976.  In 1982, Plaintiff entered Whirlpool's tool-and-die apprenticeship program, graduating as a journeyman in December of 1986.  While continuing to work at Whirlpool as a tool-and-die maker, Plaintiff attended Terra Community College from 1998 to June of 2002, graduating with an Associate's Degree in "Mechanical Engineering/Machining-Metalworking/CAD Specialist/Welding."  Plaintiff then began taking classes at Bowling Green State University (BGSU), graduating in December 2005 with a Bachelor's Degree in Technology.  Defendant paid Plaintiff's tuition at both Terra and BGSU.

In late 2004, Defendant posted an opening for a position as Temporary Stamping Engineer. Plaintiff decided not to apply for this position because he was still in college at BGSU full-time and did not want the new position to interfere with his schooling. Paul Smith, another tool-and-die maker, did apply and was awarded the position. In late 2006, Smith's position was made permanent..

In April or May 2005, Plaintiff approached Carol Wasserman, who worked in human resources for Whirlpool, and said that he was interested in taking an engineering job. As a result of this meeting, arrangements were made for Plaintiff to shadow Mike Fought, a Process Engineer. While Plaintiff would be shadowing Fought, Defendant would continue to pay Alcala's wages out of the Tool and Die department budget. This plan was ultimately not implemented, however, due to concerns that having salaried and hourly employees working together on the same job would run afoul of the Fair Labor Standards Act.

In December 2006, Plaintiff applied for an open position as Quality Engineer at Whirlpool. He was given an interview, but the position was ultimately given to Matt Wroblewski, who had been working as a Quality Assurance Manager at Sea Ray Boats in Knoxville, Tennessee at the time he applied. In early 2007, Defendant posted a job opening for a Senior Engineer position, which was eventually filled by Tom Clemmens, who had previously been a Senior Engineer at a Maytag plant in Newton, Iowa, since 2000. Plaintiff concedes that he did not apply for this position.

Around July 2007, Plaintiff began to complain to his superiors about discrimination in connection with his being passed over for engineering positions. Whirlpool conducted an internal investigation into Plaintiff's allegations, which concluded in August 2007 when Plaintiff was

informed by a Whirlpool human resources employee that the investigation had turned up no evidence of discrimination.

As early as June 2006, Plaintiff began applying for jobs outside of Whirlpool, including jobs in the nuclear power field. In January 2007, Plaintiff began a program at Terra Community College (in partnership with Davis-Besse Nuclear Power Station) in nuclear power technology. He took night classes while working at Whirlpool and graduated with an Associate's Degree in Nuclear Power Technology in December 2008.

On June 8, 2008, Plaintiff sent his resume to Appendix R Solutions ("ARS"), a contractor working at Davis-Besse. Shortly thereafter, Plaintiff interviewed with ARS. On Sunday, June 29, 2008, Plaintiff sent a signed contract of employment to ARS accepting employment with that company. Plaintiff resigned his job at Whirlpool and began work for ARS as an Assistant Engineering Technician for Fire Protection in September 2008.

**II. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential

elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."

*Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

The issues in this case boil down to three: whether Plaintiff was constructively discharged from his position at Whirlpool; whether Defendant's failure to promote Plaintiff ran afoul of the civil rights laws; and whether Defendant unlawfully retaliated against Plaintiff for engaging in statutorily-protected activity. These claims will be considered in turn.

*A. Constructive Discharge*

To make out a claim for constructive discharge, Plaintiff must show that Defendant deliberately created intolerable working conditions, as perceived by a reasonable person, and that Defendant did so with the intention of forcing Plaintiff to quit. *Lindsey v. Whirlpool Corp.*, 2008 WL 4428416 at *10 (6th Cir. 2008); *Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001). A constructive discharge occurs only where an employer's conduct is "so severe that a reasonable person in the employee's place would feel compelled to resign." *Rodriguez v. FedEx Freight East, Inc.*, 487 F.3d 1001, 1010 (6th Cir. 2007). The Sixth Circuit has set out a list of factors generally to be considered in determining whether a reasonable person would be compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a

>younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Lindsey*, 2008 WL 4428416 at *10-11; *Logan*, 259 F.3d at 569.

The Sixth Circuit has made clear that an employer's failure to promote an employee "to what [he] perceives as [his] rightful position" does not create an "intolerable" working environment for purposes of constructive discharge. *Rodriguez*, 487 F.3d at 1011; *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). Instead, a plaintiff claiming constructive discharge must prove that the environment was even more severely hostile than the "severe or pervasive" standard required in a Title VII harassment claim: "A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

The evidence adduced by the Plaintiff in this case does not come close to meeting this standard. The factual basis for Plaintiff's constructive discharge claim is that he was repeatedly passed over for promotions that he felt he should have received. The case law noted above makes abundantly clear that this sort of conduct does not rise to the level of severity needed to show a constructive discharge.

### *B. Failure to Promote*

For Plaintiff to prevail on his failure to promote claim, he must show, *inter alia*, that: (1) he applied and was qualified for a promotion; (2) he was considered for and denied the promotion; and (3) another employee of similar qualifications who was not a member of the protected class received the promotion. *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 614-15 (6th Cir.

2003). Even if Plaintiff can make out a *prima facie* case, he still bears the burden of demonstrating that any legitimate reason offered by Defendant for its promotion decisions is pretextual. *Id*. To establish pretext, Plaintiff must show that the Defendant's decision was "so lacking in merit as to call into question its genuineness." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1998)).

In the present case, the record shows only one instance where Plaintiff applied for a promotion but was nonetheless passed over. This was the Quality Engineer position that was filled by Matt Wroblewski. But there is no genuine question that Plaintiff's qualifications for this position were markedly inferior to Wroblewski's. Wroblewski, who had a bachelor's degree in Business and Operations Management from Miami University, had several years of significant managerial and oversight experience, experience which Plaintiff entirely lacked. There is no way that a reasonable jury could take account of this fact and yet nonetheless find Defendant's hiring decision "so lacking in merit as to call into question its genuineness."

Since Plaintiff did not apply for the Temporary Stamping Engineer and Senior Engineer positions that Defendant posted, Defendant's decision to award these positions to individuals who applied for them provides no evidence of an unlawful failure to promote. Because Defendant did not provide a formal mechanism for expressing interest in the permanent Stamping Engineer position, instead awarding this position to Paul Smith (the successful applicant for the Temporary Stamping Engineer position), Plaintiff's failure to "apply" for this job is surely excused. But by late 2006, when Defendant decided to make Smith the permanent Stamping Engineer, Smith had two years' experience at this position and had received favorable performance reviews. There is

no question, then, that Plaintiff did not have "similar qualifications" to Smith at the time Smith's position was made permanent.[1]

Plaintiff also urges this Court to analyze his failure to promote claim under the mixed-motive framework set forth in *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir.2008). But for substantially the same reasons noted above, Plaintiff's "circumstantial evidence" of discrimination is not sufficient to create a "genuine issue[] of material fact concerning the Defendant's motivation for its adverse employment decision." *Baxter*, 533 F.3d at 402.[2]

## *C. Retaliation*

To prevail on a retaliation claim Plaintiff must show, *inter alia*, that he suffered an "adverse employment action," and that there was a "causal connection" between that action and the plaintiff's protected activity. *Garner v. Cuyahoga County Juvenile Ct.*, 554 F.3d 624, 639 (6th Cir. 2009). In this case, Plaintiff alleges that he was subject to increased supervision following his internal complaints about discrimination. But it is well settled that "increased scrutiny of work" is

---

[1] Moreover, this Court cannot accept Plaintiff's unsupported assertion that Defendant deliberately advertised this position as a temporary one in order to deter Plaintiff from applying for it.

[2] In concluding thus, this Court is aware of the several eleventh-hour affidavits Plaintiff has attached to his response (Doc. 28) to Defendant's summary judgment motion. Many of the allegations contained in these affidavits appear to be either inadmissible hearsay or lacking an apparent foundation. In any event, the generalized allegations of discrimination they contain do not appear to have any nexus with the specific employment decisions at issue in this case. See *White*, 533 F.3d at 404 (requiring plaintiff, who had produced direct evidence that his supervisor bore a racial animus, to nonetheless produce additional evidence "from which a jury can logically infer that [the supervisor's] racial animus was a motivating factor" in the supervisor's decision to demote him).

not tantamount to an adverse employment action. See *Birch v. Cuyahoga County Probate Ct.*, 392 F.3d 151, 169 (6th Cir. 2004).

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 21) is granted.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE